UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLSTATE INSURANCE
COMPANY, an insurance company,

                    Plaintiff,

        v.

RICHARD PENNANT and SANDIE
PENNANT, husband and wife,

                    Defendants.

CASE NO. 17-CV-05817-RBL

ORDER GRANTING SUMMARY
JUDGMENT RE ACTUAL CASH
VALUE

THIS MATTER is before the Court on Plaintiff Allstate's Motion for Summary

Judgment. [Dkt. # 14]. In March 2016, Defendants Richard and Sandie Pennant purchased from

Allstate an Actual Cash Value (AVC) homeowner's insurance policy for their rental Property[1] in

Hoquiam, Washington. The policy's limit of liability is $144,281. The Pennants had tried to

purchase a "replacement cost" policy, but Allstate would not issue such a policy for this specific

property. The Pennants own several other properties similarly covered by Allstate ACV policies.

On November 24, 2016, an electrical fire caused significant damage to the Property. The

Pennants submitted a fire loss claim the next day. Allstate accepted coverage and processed the

---

[1] The Pennants purchased the home for $71,400 in 2007.

claim. The Property's value was submitted to appraisal, and that process returned two possible

valuations: $158,288.23 for "replacement cost less depreciation," and $64,500 for "fair market

value" at the time of the loss. The Pennants claim they are entitled to the higher number under

their policy. Allstate seeks judgment as a matter of law that the Pennants are entitled to only

$58,500[2], what it claims is the fair market value of the property, less the Pennants' $500

deductible.

The ACV policy provides coverage for the *smallest* of three possible scenarios: (1) the

*actual cash value* of the damaged, destroyed or stolen property at the time of loss; (2) the amount

necessary to *repair or replace* the damaged, destroyed or stolen property with other of the like

kind and quality; or (3) the policy's *limit of liability*. [Dkt. # 14, p. 3].

The only issue is the meaning of "actual cash value" under the policy.

## I. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

an issue of fact exists, the Court must view all evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

A genuine issue of material fact exists where there is sufficient evidence for a reasonable

factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[2] The discrepancy between the appraiser's valuations and the parties' is relatively minor, but it is more than the deductible and it is not clearly explained in the record. Nevertheless, the Court is asked only to determine which articulation of the loss applies, and it can do so.

one-sided that one party must prevail as a matter of law." *Id.* At 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

## II. ANALYSIS

The Court's task in interpreting an insurance contract is well-settled: it looks to the whole contract, giving it a fair, reasonable, and sensible construction. *Holden v. Farmers Ins. Co.*, 169 Wn.2d 750, 755-56 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 11 (1989). Put another way, a court "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms." *McAllister v. Agora Syndicate, Inc.*, 103 Wn. App. 106, 109 (2000) (quoting *Tewell, Thorpe, & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 576 (1992)). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister*, 103 Wn. App. At 110 (citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 44 (1971).

**A.  To define actual cash value as anything but fair market value undermines the force and effect of the policy.**

The Pennants argue that because the ACV policy language includes a reference to "deprecation" it necessarily follows that "actual cash value" means "replacement cost less depreciation." But the policy provides only that depreciation *may* play a role, not that it necessarily will:

> Loss to property . . . will be settled on an actual cash value basis. ***This means there may be*** *a deduction for depreciation.* Payment will not exceed the smallest of:
>
> a)  the actual cash value of the damaged, destroyed or stolen property at the time of the loss;
>
> b)  the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or
>
> c)  the limit of liability applicable to the damaged, destroyed or stolen property regardless of the number of building structures, other structures or items of personal property involved in the loss.

[Dkt. # 14, p. 3] (emphasis added).

Allstate contends that the italicized clause above applies only to subsection (b)— i.e., where the cost to repair or replace is less than the ACV. Otherwise, Allstate argues, the policy would read as a replacement cost policy and not as an ACV policy.

Allstate's claim that "actual cash value" means "fair market value" is supported by common sense, the context, and the express policy language. The policy explicitly provides that the insured is entitled to the *smallest* of the three possible measures. To calculate actual cash value as replacement cost less depreciation would eliminate one of the options under the policy, undermining the policy's force and effect and entitling the insured to a windfall. A fair, reasonable, and sensible construction of the policy says that actual cash value is determined by the fair market value and not replacement cost.

**B. Washington case law holds that "actual cash value" is synonymous with fair market value.**

Allstate argues that actual cash value is defined as fair market value under Washington case law. In *Nat'l Fire Ins. Co. v. Solomon*, 96 Wn.2d 763, 770 (1982), the Washington State Supreme Court held that "'actual cash value' within the statutory language of a fire policy is synonymous with 'fair market value' and does not mean replacement cost less depreciation." The Pennants counter that *Solomon* is distinguishable because it is expressly limited to analysis of replacement cost value (RCV) policies. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750 (2010). The Pennants argue that because the policy here is for actual cash value, *Solomon* does not apply. This is tantamount to an argument that ACV means one thing in RCV policies, but something else in ACV policies.

Both *Solomon* and *Holden* define actual cash value as fair market value. *Holden*, however, held that *Solomon* does not bind a court to interpreting actual cash value as fair market value within an ACV policy because *Solomon* "concerned the interpretation of a replacement cost coverage provision, not an ACV provision." *Holden*, 169 Wn.2d at 760. It held that any commentary about ACV in that opinion was "dictum." *Id.* But given the context of this ACV policy, the meaning of actual cash value is unambiguously the fair market value.

**C. The Pennants' prior dealings with Allstate do not alter this outcome.**

The Pennants argue that their prior dealings with Allstate ACV policies demonstrate that ACV means something other than fair market value. When they suffered a wind loss, they claim Allstate calculated "actual cash value" by determining the replacement cost of the repair or replacement and applying depreciation. The Pennants assert that Allstate's past conduct establishes that the definition of actual cash value is replacement cost less depreciation.

Allstate moves to strike this portion of Richard Pennant's declaration. It argues that its past conduct with respect to a partial loss (they replaced roofs after the storm) is not relevant to the measure of a total loss under the ACV policy.

Allstate's motion to strike is DENIED. Nevertheless, Pennant's declaration is unpersuasive for the reasons Allstate identifies.

The Pennants' prior dealings with Allstate actually suggest the opposite of what they argue. That the Pennants have numerous policies with Allstate suggests that the Pennants are aware of the coverage Allstate provides. Further, given that the Pennants initially asked for an RCV policy, yet settled on an ACV policy when that was all that was available for their property, suggests that the Pennants knew that actual cash value did not mean the replacement cost value.

**D.  High policy limit**

Finally, the Pennants cite their high policy limit of $144,281, as evidence that the parties intended actual cash value to be defined as replacement cost less depreciation. Allstate urges this Court to disregard that contention because the policy limit is merely an "up to" point at which a property could be valued at some point, and is therefore irrelevant.

Merely because Allstate set a policy limit exceeding the value of Pennants' property does not establish that Allstate understood it would be providing replacement cost coverage.

### III. CONCLUSION

The Pennants' policy explicitly provided that Allstate would cover loss to the Pennants based on the smallest amount available within the policy. To read actual cash value within that policy as anything but the fair market value would be to render the policy meaningless. Allstate's Motion for Summary Judgment regarding actual cash value is GRANTED.

Dated this 27th day of April, 2018.

Ronald B. Leighton
United States District Judge